IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


| | | |
|---|---|---|
| TONY NGOC NGUYEN, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| V. | ) | CASE NO. |
| | ) | |
| WALMART INC., D/B/A | ) | |
| WALMART SUPERCENTER #967; | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| DAVID PETTIGREW; | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| DEPUTY MICHAEL MCNEELEY, | ) | |
| In his individual capacity, | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |


<u>COMPLAINT FOR DAMAGES WITH JURY DEMAND</u>

COMES NOW Plaintiff Tony Ngoc Nguyen, by and through the undersigned attorneys, and hereby files this action against Defendants Walmart Inc., d/b/a Walmart Supercenter #967, David Pettigrew, and Deputy Michael McNeeley, in his individual capacity and alleges the following:

## INTRODUCTION

White Americans are largely unaware of their privileged status in the marketplace. Most of the time, white consumers can run errands, shop, dine out, and take in a show with the expectation of, at minimal, receiving appropriate service in the establishments where they patronize.[1] Shoppers of color are viewed with suspicion and, as a result, they are more likely to be watched, followed, harassed, denied service in the course of their daily roles as consumers and possibly losing their lives at the hands of law enforcement.

## PARTIES

### 1.

Tony Ngoc Nguyen is a Vietnamese American and citizen of the United States.

### 2.

Defendant Walmart, Inc. is a corporation organized under the laws of the State of Arkansas. It transacts business within the State of Florida, in particular within Hernando County, Florida.

---

[1] Anne-Marie G. Harris, *Shopping While Black: Applying 42 U.S.C. 1981 to Cases of Consumer Racial Profiling*, 23 Boston College Third World Law Journal 1 - 55 (Winter, 2003).

3.

Defendant David Pettigrew, a Caucasian-American, was/is a Walmart Asset Protection Specialist at the Walmart Supercenter located at Commercial Way in Spring Hill, Florida in Hernando County, Florida.

4.

Deputy Michael McNeeley, a Caucasian-American, was/is a deputy with the Hernando County Sheriff's Office. At all times relevant to was acting within his capacity as a deputy for the Hernando County Sheriff's Office.

## JURISDICTION AND VENUE

5.

Jurisdiction over this claim is provided to this Court under 28 U.S.C. §§ 1343 and 1331. Further, this Court has jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's state law claims of false imprisonment and false arrest, in that all claims made herein are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

6.

The Court has jurisdiction over Defendants because the unlawful acts alleged in this complaint were committed in Hernando County, Florida, which lies in the Middle District of Florida in the Tampa Division. In addition, Defendants have

minimum contacts in the Middle District of Florida in the Tampa Division.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Hernando County, Florida which lies in the Middle District of Florida in the Tampa Division, and because Defendant Walmart, Inc. transacts business Middle District of Florida in the Tampa Division.

## BACKGROUND FACTS

*Profiled as suspected shoplifters on November 6, 2022*

8.

On or about November 6, 2022, Tony Ngoc Nguyen (hereinafter "Plaintiff Nguyen or Tony"), a dark skin Asian American and his longtime girlfriend Lauren Caldwell (hereinafter "Lauren"), were invitees/customers at Walmart Supercenter located at Commercial Way in Spring Hill, Florida.

9.

While inside the Walmart supercenter, David Pettigrew (hereinafter "Defendant Pettigrew"), Walmart Asset Protection Specialist and Caucasian/White male, followed Tony and Lauren throughout their visit as the shopped for groceries at the Walmart supercenter. At times Defendant Pettigrew stared at Tony and Lauren

during their visit.

10.

At no time during their visit at the Walmart supercenter on or about November 6, 2022, Tony nor Lauren selected and took possession of the Walmart's merchandise and concealed said merchandise. Nor did Tony or Lauren attempt to remove price tags or place price tags on any of Walmart's merchandise.

11.

At no time during their visit at the Walmart supercenter on or about November 6, 2022, did Tony or Lauren engage in behavior that reasonably suggested that they were attempting to shoplift to be considered a suspected shoplifter for the purpose of beginning surveillance under Walmart's policy. Despite not being a suspected shoplifter pursuant Walmart's policy, Defendant Pettigrew continued to follow and observe Tony and Lauren.

12.

At no time during their visit at the Walmart supercenter on or about November 6, 2022, did Tony or Lauren engage in any behavior that reasonably suggested that they were attempting to shoplift to be considered a suspected shoplifter for the purpose of beginning surveillance under Walmart's policy.

13.

Pursuant to Walmart's policy, the purpose of surveillance is to observe a Suspect engaged in an "Unlawful Taking." Further, Walmart's policy does not authorized associates nor any other associate to monitor or surveil a person in a in their stores solely based on race, color, ancestry, ethnicity, religion, sex, pregnancy, national origin, age, disability, marital status, veteran status, sexual orientation, genetic information, or any other legally protected status.

14.

After purchasing around three to four hundred dollars in groceries from Walmart on or about November 6, 2022, and after being surveilled by Defendant Pettigrew, Tony and Lauren left the store without further incident.

*Incident on November 27, 2022*

15.

On November 27, 2022, Tony and Lauren were returned invitees/customers at the Walmart Supercenter located at Commercial Way in Spring Hill, Florida.

16.

Upon their return to the store and unbeknownst to Tony and Lauren, while they were shopping Defendant Pettigrew called 911 and reported that an Asian man name Cody Vondelinde (hereinafter "Cody") was in the store. Defendant Pettigrew

reported to the 911 dispatcher that Cody had been trespassed from the store and Cody tends to be violent and carry weapons.

17.

The 911dispatcher asked Defendant Pettigrew what Cody was wearing. Defendant Pettigrew's response was that he did not get a good look at Cody because he did not want to make eye contact with him. However, he did provide the dispatcher with Cody's date of birth. Defendant Pettigrew described Tony's clothing to the dispatcher and told the dispatcher he wanted Lauren trespassed from the store also.

18.

Hernando County Sheriff's Deputy Michael McNeeley (hereinafter "Defendant McNeely") responded to the Walmart. According to Deputy McNeely, upon his arrival he made contact Defendant Pettigrew, who advised him that a "Cody Vondelinde" was currently inside the store and had been previously given a trespass warning. Defendant Pettigrew then directed Defendant McNeely to the "toys section" of the Walmart store and pointed out Tony (who he believed to be Cody) to Defendant McNeely.

19.

At that time, Defendant McNeely immediately placed Tony under arrest and handcuffs for trespassing. Defendant McNeely escorted Tony in handcuffs out to his

patrol vehicle in the presence of other Walmart customers.

20.

Upon placing Tony in his patrol vehicle, Defendant McNeely returned inside the store to speak with Defendant Pettigrew. Defendant Pettigrew confirmed that Cody had been trespassed from the store. Subsequently, Defendant McNeely went to his patrol car and look at his computer. After some time, Defendant McNeely exited his vehicle and disclosed to Lauren that Tony(who he believed to be Cody) had been trespassed this year and that he was taking Tony to jail.

21.

It is undisputed that Defendant Pettigrew did not attempt to identify Tony prior to calling 911. It is undisputed that Defendant Pettigrew did not attempt to identify Tony after calling 911. It is undisputed that Defendant Pettigrew did not attempt to identify Tony after Defendant McNeely responding to the store and arrested Tony.

22.

It is undisputed that Defendant Pettigrew called 911 on the Cody and requested that the Cody to be arrested and not Tony.

23.

Defendant Pettigrew intentionally reported to 911 dispatcher that Tony was a trespasser, was dangerous, aggressive, and carried weapons solely because he was

of Asian descent similar to Cody.

24.

It is undisputed that Defendant McNeely did not attempt to identify Tony prior to arresting Tony. It is undisputed that Defendant McNeely did not attempt to identify Tony after he arrested Tony.

25.

It is undisputed that Defendant McNeely had no intentions to arrest Tony. Deputy McNeely only intentions at the store were to arrest Cody for trespassing.

26.

The only thing Cody and Tony have in common is that they both are of Asian descent. Cody and Tony are readily distinguishable from one another.



Mugshot of Cody Vondelinde.    Mugshot of Tony Nguyen on 11/27/2022

27.

Upon arrival at the Hernando County jail, Defendant McNeely collected Tony's personal belongs and identification for intake at the jail. At that time, Defendant McNeely first discovered that Tony may not be Cody. Defendant McNeely then asked Tony what his name was. Tony told Deputy McNeely his name was "Tony Nguyen". Tony provided his social security number and Florida State issued driver's license number to Defendant McNeely. Defendant McNeely was able to positively identify Tony via the Driver and Vehicle Information Database (DAVID) database.

28.

Defendant McNeely apologized to Tony and procced to take Tony home. However, Defendant McNeely denied Tony's request to remove the handcuffs. While in route to Tony's home, Defendant McNeely received a phone from his supervising sergeant who was requested a picture of Tony and photo of Tony's identification.

29.

In an effort to whitewash Defendant McNeely's unlawful arrest of Tony and despite the fact Tony had been cleared from his earlier arrest due to the fact he was not Cody, Tony was detained on the side of the road while Defendant McNeely's supervising sergeant conduct an investigation. Tony was detained on the side of the

road in handcuffs despite the fact Tony was cleared of the earlier arrest from any wrongdoing. Eventually, Defendant McNeely's supervising sergeant informed Defendant McNeely Tony had been trespassed from the Walmart location in 2013 due to shoplifting.

30.

Tony informed Defendant McNeely that his trespass warning was only in enforceable for a year. Without investigating to determine the credibility of Tony's declaration that his trespass warning was only in effect for a year, Defendant McNeely disagreed with Tony and proceeded back to Hernando County jail to book Tony for trespassing. Nor did Defendant McNeely confer with an agent of Walmart to determine if Walmart wanted to enforce the trespass warning from 2013, prior to rearresting Tony. Notably, Tony's trespass warning from 2013, violated Walmart's trespassing policy. However, Defendant McNeely acknowledge that he originally arrested Tony for reasonable suspicious of trespassing opposed to probable cause that Tony was in fact trespassing on Walmart's property.

31.

Prior to his arrest on November 27, 2022, and after his arrest in 2013 for shoplifting, Tony had patronized Walmart Supercenter #967 countless of times as an invitee/customer. As stated above, Tony and Lauren had purchased groceries on or about November 6, 2022, from Walmart Supercenter #967.

32.

Tony was incarcerated in the Hernando County jail until he was able to post bond.

33.

The Plaintiffs have suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, depression, and loss of enjoyment of life; has suffered, and continues to suffer damage to their reputation, with attendant emotional distress, embarrassment, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships; and attorney's fees and costs.

34.

Although Walmart boast Diversity, Equity and Inclusion to the American consumers, Walmart has deliberately chosen not to apologize, to the Plaintiffs, for its act of racial profiling and falsely accusing Tony of trespassing and trespassing Lauren without any valid cause to do so.[2]

---

[2] https://corporate.walmart.com/global-responsibility/diversity-equity-and-inclusion

35.

Tony is a member of a racial minority in the United States.

36.

On January 25, 2023, Tony's trespassing charged was dismissed.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1981)
(Against Defendants Walmart, Inc. and Pettigrew)

37.

Plaintiffs hereby adopts, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 36.

38.

On or about November 6, 2022, Defendant, Walmart Inc., acting through its employees and agents, targeted Tony by surveilling him solely based on Tony's race.

39.

Tony nor Lauren engaged in behavior that reasonably suggested that they were attempting to shoplift to be considered a suspected shoplifter for the purpose of beginning surveillance under Walmart's policy. Despite not being a suspected shoplifter pursuant Walmart's policy, Defendant Pettigrew continued conduct

surveillance on Tony and Lauren.

40.

At no time during their visit at the Walmart supercenter on or about November 6, 2022, did Tony nor Lauren engaged in any behavior that reasonably suggested that they were attempting to shoplift to be considered a suspected shoplifter for the purpose of beginning surveillance under Walmart's policy.

41.

Pursuant to Walmart's policy, the purpose of surveillance is to observe a Suspect engaged in an "Unlawful Taking." Further, Walmart's policy does not authorized associates nor any other associate to monitor or surveil a person in a in their stores solely based on race, color, ancestry, ethnicity, religion, sex, pregnancy, national origin, age, disability, marital status, veteran status, sexual orientation, genetic information, or any other legally protected status.

42.

On November 27, 2022, Defendant, Walmart Inc., acting through its employees and agents, targeted Tony solely based on Tony's race.

43.

The above facts clearly establish the Defendants targeted Tony solely based on his race. As aforementioned, the only thing Cody and Tony have in common, is

that they both are of Asian descent. Cody and Tony are readily distinguishable from one another. But for Tony's Asian descent, he would have not been targeting by Defendant Pettigrew. As a result of Defendant Walmart, Inc.'s and Defendant Pettigrew's actions, Tony was illegally arrested and false imprisoned.

44.

Defendant Walmart, Inc., and Defendant Pettigrew therefore deprived Plaintiffs the full and equal benefits of all laws and proceedings for the security of person and property as are enjoyed by Caucasian citizens, in violation of 42 U.S.C. § 1981.

45.

Tony has been damaged as a direct and proximate result of Defendants Defendant Walmart, Inc.'s and Defendant Pettigrew's actions. In particular, Tony have suffered injuries including, but not limited to:

inconvenience;
insult;
mental distress;
embarrassment;
humiliation;
anxiety;
depression;
emotional pain and suffering;
loss of earnings and;
loss and earning capacity.

46.

Defendants Pettigrew's and Walmart's actions were willful, wanton, reckless and malicious, and further show a complete and deliberate indifference to, and conscious disregard for rights of the Tony. Therefore, Tony is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and other companies from like conduct in the future.

47.

Tony is entitled to recover from defendant reasonable attorneys' fees, as provided by 42 U.S.C. § 1988.

48.

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendants Pettigrew and Walmart for Tony's actual damages, nominal damages and exemplary or punitive damages as are proven at trial, for their reasonable attorney's fees and costs incurred herein and for any such further legal and equitable relief as this Court deems appropriate.

SECOND CLAIM FOR RELIEF
(42 U.S.C. § 1982)
(Against Defendants Walmart, Inc. and Pettigrew)

49.

Plaintiffs hereby adopts, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 36.

50.

Defendant, Walmart Inc., acting through its employees and agents, caused Tony to be arrested, solely because on his Asian descent. The above facts clearly establish the Defendants targeted Tony solely based on his race. As aforementioned, the only thing Cody and Tony have in common, is that they both are of Asian descent. Cody and Tony are readily distinguishable from one another. But for Tony's Asian descent, he would have not been targeting by Defendant Pettigrew.

51.

Defendant, Walmart Inc., acting through its agents and employees, interfered with the rights of Plaintiffs, as enjoyed by Caucasian citizens, to purchase personal property, in violation of 42 U.S.C. §1982.

52.

Tony has been damaged as a direct and proximate result of Defendants Defendant Walmart, Inc.'s and Defendant Pettigrew's actions. In particular, Tony have suffered injuries including, but not limited to:

inconvenience;
insult;
mental distress;
embarrassment;
humiliation;
anxiety;
depression;
emotional pain and suffering;
loss of earnings and;

loss and earning capacity.

53.

Defendants Pettigrew's and Walmart's actions were willful, wanton, reckless and malicious, and further show a complete and deliberate indifference to, and conscious disregard for rights of the Tony. Therefore, Tony is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and other companies from like conduct in the future.

54.

Tony is entitled to recover from defendant reasonable attorneys' fees, as provided by 42 U.S.C. § 1988.

55.

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendants Pettigrew and Walmart for Tony's actual damages, nominal damages and exemplary or punitive damages as are proven at trial, for their reasonable attorney's fees and costs incurred herein and for any such further legal and equitable relief as this Court deems appropriate.

THIRD CLAIM FOR RELIEF
(42 U.S.C. § 1983 – Unlawful Seizure violation of the Fourth Amendment)
(Against Defendant McNeely)

56.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 36 of this Complaint.

57.

42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…..

58.

Tony in this action is a citizen of the United States and Defendant McNeely to this claim are persons for purposes of 42 U.S.C. § 1983.

59.

Defendant McNeely, at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer employed by Hernando County Sheriff's Office. Defendant McNeely's acts or omissions were conducted within the scope of his official duties or employment.

60.

At the time of the complained events, Tony had a clearly established constitutional right under the Fourth Amendment to be secure in his person from an unlawful seizure.

61.

Any reasonable law enforcement officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

62.

Specifically, Defendant McNeely stated that he originally arrested Tony for reasonable suspicious opposed to probable cause while enroute back to the jail. Defendant McNeely's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Tony.

63.

Defendant McNeely's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Tony's federally protected rights.

64.

Defendant McNeely in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

65.

Defendant McNeely did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

66.

The acts or omissions of Defendant McNeely were moving forces behind Plaintiff's injuries.

67.

The acts or omissions of Defendant McNeely as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

68.

Defendant McNeely is not entitled to qualified immunity for his actions.

69.

As a proximate result of Defendant McNeely's unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant McNeely's unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medical and other special damages-related expenses, in amounts to be established at trial.

70.

On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his injuries, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

71.

In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages against Defendant McNeely under 42 U.S.C. § 1983, in that the actions of Defendant McNeely's were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

72.

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendant McNeely for Plaintiffs actual damages, nominal damages and exemplary or punitive damages as are proven at trial, for their reasonable attorney's fees and costs incurred herein and for any such further legal and equitable relief as this Court deems appropriate.

### FOURTH CLAIM FOR RELIEF
(False Imprisonment)
(Defendants Pettigrew and Walmart)

73.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 36 of this Complaint.

74.

Defendants Pettigrew and Walmart instigated the unlawful arrest of Plaintiff Nguyen. Defendants Pettigrew and Walmart requested the arrest of Plaintiff Nguyen.

75.

It is undisputed that Defendant Pettigrew did not attempt to identify Tony prior to calling 911. It is undisputed that Defendant Pettigrew did not attempt to identify Tony after calling 911. It is undisputed that Defendant Pettigrew did not attempt to identify Tony after Defendant McNeely responding to the store and

arrested Tony.

76.

As a result of Defendants Pettigrew and Walmart actions of instigated the unlawful arrest of Plaintiff Nguyen. Plaintiff Nguyen was arrested and falsely imprisoned.

77.

On January 25, 2023, Tony's trespassing charged was dismissed.

78.

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendants Pettigrew and Walmart for Tony's actual damages, nominal damages and exemplary or punitive damages as are proven at trial, for their reasonable attorney's fees and costs incurred herein and for any such further legal and equitable relief as this Court deems appropriate.

FIFTH CLAIM FOR RELIEF
(False Arrest)
(Defendant McNeely)

79.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 36 of this Complaint.

80.

Defendant McNeely acknowledged that he arrested Tony for reasonable suspicious of trespassing opposed to probable cause.

81.

Defendant McNeely made a warrantless arrest without probable cause to do so in violation of Florida Law and the Fourth Amendment to the United States Constitution.

82.

It is undisputed that Defendant McNeely did not attempt to identify Tony prior to arresting Tony. It is undisputed that Defendant McNeely did not attempt to identify Tony after he arrested Tony. A reasonable law enforcement officer would have at minimum requested identification before making an arrest.

83.

On January 25, 2023, Tony's trespassing charged was dismissed.

84.

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendant McNeely for Tony's actual damages, nominal damages and exemplary or punitive damages as are proven at trial, for their reasonable attorney's fees and costs incurred herein and for any such further legal and equitable relief as this Court deems appropriate.

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount in excess of $10,000,000.00.

1. economic losses on all claims allowed by law;

2. special damages in an amount to be determined at trial;

3. punitive damages on all claims allowed by law against individual Defendants and in an amount in excess of $100,000.00;

4. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

pre- and post-judgment interest at the lawful rate; and,

any further relief that this court deems just and proper, and any other appropriate relief a law and equity.

PLAINTIFFS REQUESTS A TRIAL BY JURY.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule

Date: March 2, 2023

Respectfully submitted,

*/s/ Harry M. Daniels*
Harry M. Daniels
Georgia Bar No. 234158
*(Pending Special Admission)*

Law Offices of Harry M. Daniels, LLC
4751 Best Road Suite 490
Atlanta, GA 30337
Tel.: (678) 664-8529
Fax.: (800) 867-5248
daniels@harrymdaniels.com

*/s/ Norman Harris*
Norman Harris
Florida Bar No. 0077474

Champions for Justice Law, LLC
100 S Ashley Dr., Suite 600
Tampa, Florida 33602
Tel.: (813) 449-4295
nharris@cfjlaw.com

*/s/ Shaunette L. Stokes*
Shaunette L. Stokes
Florida Bar No. 109278

Stokes Law Group
10150 Highland Manor Drive
Suite 200
Tampa, Florida 33602
Tel.: (813) 444-4156
Fax.: (813) 702-1976
Shaunette@stokeslegalcounsel.com